United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **Griswold Enterprises, LLC** | § | Case No. 25-30707 |
| | § | |
| **Debtor** | § | **Subchapter V** |

# AMENDED ORDER CONFIRMING DEBTOR(S)' THIRD AMENDED PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1191(b)

The Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the subchapter V plan of reorganization, ECF No. 133 (the "*Plan*") filed by Griswold Enterprises, Inc. (the "*Debtor*(s)"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

## I. JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless otherwise indicated.
[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This order supplements those findings and conclusions. If there is an inconsistency, this Order controls.

On February 4, 2025 (the "*Petition Date*"), the Debtor(s) commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184.

On February 6, 2025, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee, (ECF No. 9), appointing Thomas A. Howley as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

As of the petition date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of

[3] 11 U.S.C. § 157(b)(2).
[4] Stern v. Marshall, 564 U.S. 462 (2011).

the Plan under 11 U.S.C. § 1189.

The Debtor complied with 11 U.S.C. §1189(b). The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

After solicitation of votes, no votes accepting the plan were cast.

Therefore, Debtor proceeds under 11 U.S.C. §§1191(b).

The Plan does not discriminate unfairly.

The Plan is fair and equitable with respect to each impaired, non-accepting class.

The Debtor has committed all projected disposable income to the Plan for five (5) years.

The value of property distributed equals projected disposable income over the five (5)

years.

The Debtor has satisfied the Liquidation Analysis.

The Debtor, as proponent of the Plan, has met the burden of proving the applicable elements of 11 U.S.C. §§1191(b) by a preponderance of the evidence.

Accordingly, it is therefore

**ORDERED:** that

1. The Third Amended Plan of Reorganization filed by the Debtor on February 13, 2026 (ECF No. 133), is hereby CONFIRMED and approved in each and every respect as a consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date. The terms of the Plan and the Debtor'(s) or Reorganized Debtor'(s) entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor(s) and reorganized Debtor(s) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2. To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3. Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4. In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5. Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order, ("*Notice*"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6. The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on: (a) the Debtor(s); (b) all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7. The following Nonmaterial Plan Modifications are hereby approved:

None.

8. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

9. The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

10. Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

11. The Subchapter V Trustee shall be disbursing agent. The Debtor shall transfer to the Subchapter V Trustee all disposable income to make plan payments no later than the 10th day of every month. Failure of the Debtor to timely transfer sufficient funds to the Subchapter V Trustee to make all payments required under the Plan shall constitute a default of the Debtor's obligations under the Plan.

12. In the event the Debtor defaults on any obligation to Holders of Claims under the Plan, including failing to make any payment required under the Plan, the Subchapter V Trustee or the Holder(s) of any Claim affected by such default may file a Notice of Default, and if such default is not cured, within thirty (30) days of the date of the filing the Notice of Default, the case shall be converted to chapter 7.

13. The estate specifically retains the right to prosecute any and all claims and causes of action against Erin McMillan Griswold, Samuel Griswold, B.E. Beautiful, and any insider of the Debtor.

14. Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on

or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

15. The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

16. The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

17. Pursuant to 11 U.S.C. § 1186, all property acquired by the Debtor after the after the date of commencement of the case but before the case is closed or converted to a case under chapter 7 is property of the estate and the Debtor remains in possession of property of the estate

18. The ability of the Reorganized to utilize its assets is critical to maintaining operations, preserving value and effectuating distributions.

19. All creditors shall retain the rights and remedies provided under the Plan and this Order including the right to receive distributions, the right to enforce Plan payment obligations upon default and any lien rights granted under the Plan.

20. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

21. No later than fourteen (14) calendar days from the Effective Date of the confirmed Plan, all professionals, including the Subchapter V Trustee, must file interim or final fee applications, as the case may be, pursuant to Fed. R. Bankr. P. 2016.

22. Debtor must request a hearing date on all final motions including the motion for final decree.

23. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

**Disbursing Agent**

24. In the event the Court orders the Subchapter V Trustee to make payments to Creditors under the Plan, the Subchapter V Trustee shall be compensated for his post-confirmation duties at his normal hourly rate and shall be paid from the Projected Disposable Income or if insufficient directly from the Reorganized Debtors as a requirement for the continuation of services as the Disbursing Agent. The amount of Projected Disposable Income distributed or reserved to Creditors will be net of the Projected Disposable Income remitted by the Debtor to the Subchapter V Trustee to cover post-confirmation fees and expenses. The Subchapter V Trustee's fees and expenses shall be disclosed in the quarterly report filed with the Court. In the event there is no Projected Disposable Income for a quarterly period, the Debtor is required to advance payment for the Subchapter V Trustee's fees and expenses.

25. The Debtor is authorized to deduct from the Projected Disposable Income any amounts advanced by the Debtor to pay the Subchapter V Trustee's fees and expenses. The Subchapter V Trustee shall file post-confirmation quarterly fee applications within fourteen (14) days of each quarterly report filed with the Court which shall include all compensation received and disclosed in the quarterly reports. The Subchapter V Trustee shall file a post-confirmation final fee application within fourteen (14) days of the filing of the motion for final decree under

Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order. Following entry of the Confirmation Order requiring the Subchapter V Trustee to make payments to Creditors under the Plan, any disbursements made by the Subchapter V Trustee on account of a Claim are deemed authorized disbursements, and the Subchapter V Trustee shall have no liability for these disbursements. The Subchapter V Trustee shall have no liability to any person in the event that the Debtor fails to timely deliver funds to the Subchapter V Trustee, or otherwise fails to perform its obligations under the Plan. The Subchapter V Trustee shall have no obligation to make Disbursements on account of Allowed Claims unless and until he determines that there are adequate funds to cover a distribution to Holders from the Projected Disposable Income, net of the Subchapter V Trustee's fees and costs (including any required post-confirmation retainer).

26. The Subchapter V Trustee shall have no responsibility to initiate disbursements until the Debtor has provided an initial payment of $1,000 in order to fund the set up of the bank account to handle disbursements. The initial payment is necessary to cover the ordering of checks and to provide a buffer for any other expenses.

27. The Subchapter V Trustee must make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Subchapter V Trustee") on or before the 25th of each month (the "Deadline"). After receipt of the plan payments, the Subchapter V Trustee must distribute plan payments in accordance with the terms of this Order and the Plan before the 25th of each month until all required payments have been made. If the Debtor fails to make all required plan payments to the Subchapter V Trustee by the deadline, the Subchapter V Trustee must provide notice to Debtor and Debtor's counsel and request payment within seven (7) calendar days of the notice. If

Debtor fails to make the required plan payment to the Subchapter V Trustee within seven (7) calendar days of the notice, the Subchapter V Trustee must file a notice of default with the Clerk of Court.

28. The Subchapter V Trustee must file, a preliminary report at the conclusion of the six (6) months from entry of the confirmation order and then for the duration of the period in which the Debtor must tender projected disposable income or equivalent values of property under the confirmed plan as required under § 1191(c)(2) (the "Non-Consensual Commitment Period"), a status report on each anniversary date of the entry of the confirmation order which outlines the status of payments made by the Debtor and distributed by the Subchapter V Trustee in the past year and any other post-confirmation action taken toward consummation of the plan and serve that report upon the master mailing list (matrix) as constituted by the Court on the date of service.

29. Within fourteen (14) calendar days of entry of this Confirmation Order, the Debtor must provide the Subchapter V Trustee with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Subchapter V Trustee to send plan payments. If there are any disputed claims, the Debtor must provide a separate list of such disputed claims and an estimated date of resolution. The Debtor must file a certificate of service with the Clerk of Court indicating that the claim information required by this paragraph has been timely served on the Subchapter V Trustee.

30. Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Subchapter V Trustee must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a

final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Subchapter V Trustee must distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Subchapter V Trustee must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

31. Disbursements may be delivered by the Subchapter V Trustee to (i) the address list provided by the Debtor; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Subchapter V Trustee. If any distribution to a claimant of an allowed unsecured claim is returned to the Subchapter V Trustee as undeliverable, no further distributions shall be made to such claimant unless and until the Subchapter V Trustee is notified in writing of such claimant's correct mailing address, at which time all currently due distributions must be made to such claimant as soon as practicable. Undeliverable distributions must remain in the possession of the Subchapter V Trustee until such time as a distribution becomes deliverable and must not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Subchapter V Trustee is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Subchapter V Trustee must deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

32. The Subchapter V Trustee must file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program.

33. At the conclusion of the Plan Period and upon completion of Plan payments during such time, the Subchapter V Trustee must file, with the Clerk of Court, a notice of completion of

plan payments which documents that all payments of projected disposable income or equivalent values of property by the Debtor under the confirmed plan as required under § 1191(c)(2) have been completed and that all other prerequisites for the entry of an order of discharge pursuant to 11 U.S.C. § 1192 have been fulfilled ("Notice of Plan Completion").

34. This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

35. Attached hereto as Exhibit A is the Declaration of Patrick Macmillan evidencing Patrick Macmillan's commitment and obligation to providing capital contributions. It shall be a default under the Third Amended Plan if the $5,000.00 monthly contribution is not received by the disbursing agent on the 10th of each day of the month beginning April 10, 2026 and continuing for a total of 11 months or $55,000.00. Such default will trigger the remedies available under Paragraphs 12 and 27 of this order. Failure to cure the default shall result in the case being converted to a Chapter 7.

Signed: April 01, 2026

Alfredo R Pérez
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **Griswold Enterprises, LLC** | § | Case No. 25-30707 |
| | § | |
| **Debtor** | § | **Subchapter V** |

**DECLARATION AND AFFIDAVIT OF PATRICK MACMILLAN IN SUPPORT OF THE DEBTOR'S CHAPTER 11 CONFIRMATION ORDER**

I, Patrick MacMillan do hereby declare, under penalty of perjury, that:

"My name is Patrick MacMillan. I am over eighteen (18) years of age. I am in competent mental and physical health and have personal knowledge of the facts contained herein:

1. My approximate monthly income is $ 11,100.00.
2. The source of my income is social security, VA disability benefits, consulting fees, retirement investments.
3. My approximate monthly expenses are $ 4200.00.
4. I have sufficient remaining income and assets that I am willing to commit $5,000.00 as a capital contribution to the Debtor's monthly budget for the next 11 months totaling $55,000.00.
5. I am willing to do so to help the Debtor be able to fund a feasible plan of reorganization as my daughter, Erin Griswold, and my son-in-law, Samuel Griswold, are the owners of the Debtor.
6. I consider this a binding contractual obligation based on familial love and the desire to see the Debtor successfully reorganize its business.

I declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge, information, and belief'.

"Further Affiant sayeth not."

Name: Patrick MacMillan
Name: [signature]

Subscribed and sworn to before me on this 3/26/2026, to certify which witness my hand and seal.

[signature]
Notary Public, State of Texas
My Commission Expires: 05/03/2026

LEONOR HERNANDEZ
Notary Public, State of Texas
Comm. Expires 05-03-2026
Notary ID 133740870

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 25-30707** |
| **GRISWOLD ENTERPRISES, L.L.C. D/B/A** | § | |
| **DOUBLE DAVE'S PIZZAWORKS,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| **Debtor.** | § | |

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Griswold Enterprises, L.L.C. d/b/a Double Dave's Pizzaworks, the debtor and debtor in possession in the above-captioned case, hereby proposes the following Plan pursuant to § 1121 of the Bankruptcy Code. The Debtor is a proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a chapter 11 reorganization plan for the Debtor. In summary, the Plan provides for the Debtor to restructure its debts by reducing its monthly payments to the amount of the Debtor's Disposable Income. The Debtor believes that the Plan will ensure Holders of Allowed Claims will receive greater distributions under the Plan than they would if the Debtor's Chapter 11 Case was converted to Chapter 7 and the Debtor's Assets liquidated by a Chapter 7 Trustee.

Subject to the restrictions on modifications set forth in § 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, as a proponent, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its confirmation, for the resolution of its outstanding Claims and Equity Interests, without prejudice to any Holders of Claims, Equity Interests or other parties in interest to object to same.

All Holders of Claims against, and Equity Interests in, the Debtor is encouraged to read the Plan in its entirety.

**NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN CONCERNING THE DEBTOR'S HISTORY, THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT ANY OTHER PARTY.**

## EXPLANATION OF THE PROCESS OF CONFIRMATION

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the

plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## VOTING PROCEDURES

**Unimpaired Class**. Claimants in Classes 1 and 4 of the Plan are not impaired under the Plan. Such Claimants are deemed to have accepted the Plan.

**Impaired Classes**. Claimants in Classes 2 through 3 of the Plan are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 3. Each holder of an Allowed Claim in Classes 2 through 3 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Vicky M. Fealy, The Fealy Law Firm, PC, 1235 North Loop West, Suite 1120, Houston, TX 77008 or via email at vfealy@fealylawfirm.com . In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor in order to make payments to its creditors as set forth in this Plan. Debtor seeks to confirm a consensual plan or reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to its creditors. Regardless, if the Debtor must seek confirmation of this Plan pursuant to § 1191(b), then the Debtor will likewise seek approval from the Court to act as the payment administrator under the Plan pursuant to § 1194(b). Debtor asserts that it is in the creditors best interests for the Debtor to act as payment administrator under the Plan even if the Plan is confirmed pursuant to § 1191(b), as it will reduce administrative expenses, providing greater payout to general unsecured creditors. Debtor asserts that cause exists for the Court to allow the Debtor to act as payment administrator even if confirmed pursuant to
§ 1191(b).

## BEST INTERESTS OF CREDITORS TEST

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estates' interest in the property that secures such claims. In order for the Plan to be

confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE I.
## DEFINITIONS

**1.1 Definitions.**

As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

"**Administrative Claims**" means a Claim for payment of an administrative expense of a kind specified in §§ 503(b), 507(b), and 1114(e)(2) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor incurred on or after the Petition Date but prior to the Effective Date, any indebtedness or obligations incurred or assumed by the Estate in connection with the conduct of the Debtor's business on or after the Petition Date and prior to the Effective Date, any Professional Fee Claim, all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code, and any Claim granted administrative-expense priority status by Final Order.

"**Allowance Date**" means the date on which a Claim is Allowed.

**"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

**"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or

other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C.§506(a).

**"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

**"Assets"** shall have the meaning ascribed in Section 3.2 of the Plan.

**"Avoidance Actions"** means any cause of action commenced, or that that may be commenced before or after the Effective Date, pursuant to §§ 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, including, without limitation, such actions that arise under state law for fraudulent conveyance and other similar avoidance actions.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

**"Bar Date"** means the last date on which proofs of Claim may be timely filed against the Debtor unless otherwise extended by Final Order of the Bankruptcy Court, which is April 15, 2025, for all claimants.

**"Business Day"** means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**"Cash"** means Cash and cash equivalents.

**"Causes of Action"** means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to equitable remedy, right to payment, and claim, including Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation: (a) any claim or right to recover damages (general, exemplary, or otherwise) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii)

violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) unjust enrichment, suit on a sworn account, accounting, quantum meruit, restitution, (vi) malpractice, (vii) breach of contract, (viii) conversion, (ix) recharacterization, (x) alter ego, aiding and abetting, conspiracy, *respondeat superior*, or other vicarious or secondary liability claims relating to all of the aforementioned claims, or (xi) any other claim of the Debtor against any party, to the extent not specifically compromised or released pursuant to the Plan, or a Final Order entered by the Bankruptcy Court after notice and opportunity for hearing; (b) any claims of the Debtor for subordination under § 510 of the Bankruptcy Code or under other applicable laws; (c) any objection to any Disputed Claim that includes as a basis any counterclaim by the Debtor or the Estate for affirmative relief, and is pending and not resolved by Final Order as of the Effective Date, together with all liability of the Debtor or the Estate on account of such Disputed Claims; and (d) all claims and defenses asserted by the Debtor in a contested matter or an adversary proceeding or other civil litigation. Causes of Action also specifically include: (i) all Avoidance Actions; (ii) all tort and common law claims held by the Debtor against any person, including, without limitation, the following: (a) Persons that were or are joint venturers or partners with, or controlling persons of, the Debtor, (b) Governmental Units, including taxing authorities, (c) Holders of Equity Interests; and (iiii) all claims held by the Debtor whether in contract, tort, or statutory law against current or former: (a) customers, (b) Claimants, (c) officers, managers, members, and directors, (d) suppliers (including any person with whom the Debtor ever did business), (e) employees, (f) managers and affiliates, and (g) insurers (including, without limitation, for directors and officers liability coverage, business interruption, or similar claims).

**"Chapter 11 Case" or "Case"** means Debtor's bankruptcy case commenced by the filing of voluntary petition for relief for the Debtor on February 4, 2025, under chapter 11 of the Bankruptcy Code, administered under Case No. 25-30707 pending before Bankruptcy Judge Alfredo R. Pérez in the Bankruptcy Court.

**"Claim"** means any right to payment from the Debtor or its Estate, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy against the Debtor or its Estate for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown or as otherwise within the definition of "claim" as set forth in § 101(5) of the Bankruptcy Code

**"Claimant"** means a Person holding a Claim against the Debtor, property of the Debtor, the Estate, or any Asset.

**"Claims Objection Deadline"** shall be one hundred and eighty (180) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court by the Reorganized Debtor on or prior to such date.

**"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to § 1122 of the Bankruptcy Code.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Collateral"** means any property or interest in property of the Estate that is subject to a Lien to secure the payment or performance of a Claim, which such Lien is not avoided, subject to avoidance under the Bankruptcy Code, or other applicable law or otherwise invalid under the

Bankruptcy Code or applicable law.

"**Confirmation**" means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order of the Bankruptcy Court, and any amendment thereto, confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"**Contingent Claim**" means a Claim for which the Debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.

"**Debtor**" means Griswold Enterprises, L.L.C. d/b/a Double Dave's Pizzaworks, the Debtor and Debtor-in-Possession in the Chapter 11 Case.

"**Debtor-in-Possession**" means the Debtor in its capacity as a debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

"**Deficiency Claim**" means any portion of a Secured Claim (a) to the extent the value of the Collateral securing such Claim is less than the amount of such Claim or (b) to the extent the amount of the Claim that is secured by a right of setoff is less than the amount of such Claim, each as determined pursuant to § 506(a) of the Bankruptcy Code.

"**Disallowed**" means a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the Holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which no proof of Claim or proof of Equity Interest has been filed or deemed filed with the Bankruptcy Court by the Bar Date or pursuant to either the Bankruptcy Code or a Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or Equity Interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

"**Disposable Income**" means the income that is received by the Debtor from its business operations, including all proceeds received by the Reorganized Debtor from nail salon services, that is not reasonably necessary to be expended for the payment of its expenditures necessary for the continuation, preservation, or operation of the Debtor's business.

"**Disputed Claim**" means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the Claim Objection

Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules; or (d) such Claim is otherwise objectionable.

**"Distribution"** means the property distributed to the Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Bankruptcy Code.

**"Effective Date"** means thirty (30) days after the Court enters an order confirming the Plan.

**"Entity"** means an entity as such term is defined in § 101(15) of the Bankruptcy Code.

**"Equity Interest"** means any ownership interest in the Debtor represented by shares of stock, or membership or partnership interest in the Debtor, including, to the extent provided by applicable law, any warrant, option, or other security to acquire any of the foregoing in the Debtor.

**"Estate"** means the bankruptcy Estate created on the filing of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

**"Face Amount"** means (i) as to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor.

**"Final Order"** means an order or judgment under 28 U.S.C. § 158(a)(1) of the Bankruptcy Court or other court having jurisdiction over any matter that (a) has not been reversed, stayed, or vacated, (b) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and no such action has occurred, or (c) if a timely appeal is filed, upon completion of the appellate process either through the expiration of an initial deadline for invoking further appellate jurisdiction or, if in the United States Supreme Court, through the issuance of that Court's final decision; *provided*, *however*, no order shall fail to be a Final Order because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed to that order.

**"Governmental Unit"** means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

**"Holder"** means any Entity holding a Claim or an Equity Interest.

**"Impaired"** means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**"Injunction Beneficiaries"** means the Injunction Beneficiaries as defined in Section 11.3 of the Plan.

**"Lien"** means a charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed-of-trust lien, security interest, judicial lien, judgment lien, pledge, encumbrance, or writ of attachment.

**"Order"** Any order, mandate, precept, command, or direction formally given or entered by court of competent jurisdiction.

**"Person"** means as identified in § 101(41) of the Bankruptcy Code and includes an individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, Estate, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

**"Petition Date"** means February 4, 2025, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

**"Plan"** means this First Amended Chapter 11 Plan of Reorganization, as it may be amended or modified.

**"Plan Documents"** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

**"Post-Confirmation Service List"** means a list of parties-in-interest to whom post-confirmation service of process shall be provided. The Post-Confirmation Service List shall be limited, and shall consist of only (a) the Debtor, (b) the Subchapter V Trustee, (c) the United States Trustee, (d) any party who after entry of the Confirmation Order files a request for such notice with the Clerk, and (e) counsels/attorneys of records of the parties identified in (a) – (d).

**"Prime"** shall mean the prime interest rate that runs approximately 300 basis points (or 3 percentage points) above the federal funds rate, which is the interest rate that banks charge each other for overnight loans made to fulfill reserve funding requirements. As of December 19, 2024, the prime interest rate is 7.50% in the United States.

**"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

**"Proof of Claim" or "Proof of Interest"** means a proof of claim or proof of interest, as the case may be, filed with the Bankruptcy Court with respect to the Debtor pursuant to § 501 of the Bankruptcy Code and Bankruptcy Rules 3001, 3002, or 3003 in accordance with the various orders of the Bankruptcy Court.

**"Proponent"** means the Debtor.

**"Pro Rata"** means the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class or if distribution is to multiple Classes of equal priority, the aggregate amount of all Allowed Claims in such Classes.

**"Reorganized Debtor"** means the post-Effective Date Debtor.

**"SBA"** means the United States Small Business Administration.

**"<u>SBA Collateral</u>"** means the collateral that serves as security for the SBA Secured Claim and includes all Assets of the Debtor.

**"<u>SBA Secured Claim</u>"** means the Secured Claim of SBA in the aggregate amount of 52,560.02 as of the Petition Date. The debt owed to the SBA is secured by a Lien or Liens on the SBA Collateral.

**"<u>Schedules</u>"** means the Schedules of Assets and Liabilities, and the Statements of Financial Affairs filed by or on behalf the Debtor in its Chapter 11 Case pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

**"<u>Subchapter V Trustee</u>"** means Thomas A. Howley, as the Subchapter V Trustee appointed in this Chapter 11 Case.

**"<u>Tax Claim</u>"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an individual or Entity as a Holder of a Claim or Equity Interest includes that individual's or Entity's successors, assigns and affiliates.

## ARTICLE II.
## RULES OF CONSTRUCTION AND INTERPRETATION

**2.1 <u>Rules of Construction</u>**. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. Captions, articles, and section headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Any phrase containing the term "include" or "including" means including without limitation without the necessity of repeating same in each instance. The rules set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Article of the Plan.

A capitalized term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A capitalized term used in this Plan and not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Rules.

**2.2 <u>Governing Law</u>**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents,

instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control).

## ARTICLE III
## REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV.
## BACKGROUND

**4.1** **Description and History of the Debtor's Business**. Founded in 2020, the Debtor operates a Double Dave's Pizzaworks franchise located at 7312 Louetta Road, Spring, Texas 77379. The Debtor offers an array of hand-crafted pizzas, Pepperoni Rolls®, strombolis, salads, and desserts. The Debtor employs eight (8) individuals, including the Debtor's owners, Samuel Griswold and Erin Macmillan Griswold.

**Description of Debtor's Main Assets**. As identified on the Debtor's Schedule A/B filed at Docket No. 25, the Debtor's Assets include its: (i) cash; (ii) food ingredients; (iii) restaurant furniture; and (iv) kitchen equipment. There is a fully secured creditor as to this property based on the liquidation analysis (**Exhibit A**) and UCC filings. Any secured creditors not treated as fully secured in this Plan are therefore under secured.

**4.2** **Post-Confirmation Management**. After confirmation, Samuel Griswold and Erin Macmillan Griswold shall manage the operations of the Reorganized Debtor.

**4.3** **Debtor's Compliance with the Code**. The Debtor has filed this Plan in good faith. The Debtor represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor believes that the Plan complies with all applicable provisions of the Code. The Debtor does not believe that Subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of Section 1129 of the Code are applicable to the Debtor or the Plan. The Debtor affirmatively asserts that the Plan complies with the applicable provisions of the Code ((a)(1)), and has been proposed in good faith and not by any means forbidden by law ((a)(3)). Further, the Debtor affirmatively asserts that they have complied with the applicable provisions of the Code ((a)(2)). The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor ((a)(11)).

**4.4** **Liquidation Analysis**. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit A** and shows that none of the unsecured creditors of the Debtor would receive payment in full of their Allowed Claims in a Chapter 7 liquidation. All Allowed Secured Claims will be paid in full under this Plan. The equity interests shall retain their ownership.

**4.5** **Ability to Make Future Plan Payments and Operate without Further Reorganization**. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. Attached hereto as **Exhibit B** are projections of gross income, expenses and operating income for the next five (5) years (the "Projections"). It is anticipated that after confirmation, the Debtor will continue in business. Based upon the Projections, the Debtor believes it can service the debt to creditors.

## ARTICLE V. CLASSIFICATION
## OF CLAIMS AND INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of organization, and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in the Debtor shall be classified as set forth in this Article V.

**5.1** **Administrative Claims**. As provided in § 1123(a) of the Bankruptcy Code,

Administrative Claims shall not be classified; they are therefore excluded from the Classes of Claims and Interests set forth below.

**5.2** **Classes of Claims and Interests**. A Claim or Interest is in a particular Class only to the extent the Claim or Interest is an Allowed Claim or Allowed Interest. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims(except for Administrative Claims) and Interests shall be classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment |
|---|---|---|
| 1 | Allowed Priority Tax Claims<br>Unimpaired | The Holders of Allowed Priority Tax Claims include Alief Independent School District, Klein Independent School District, Kleinwood Municipal Utility District, City of Houston, Harris County Municipal Utility, Texas Comptroller of Public Account, and the Internal Revenue Service<br><br>Alief Independent School District, Klein Independent School District, Kleinwood Municipal Utility District, City of Houston, Harris County Municipal Utility shall receive the full amount their priority tax claims in twelve consecutive monthly payments with interest at the state rate of 12% per annum and commencing thirty days after the Effective.<br><br>The Texas Workforce Commission shall receive the full amount of its priority tax claim in twenty four (24) consecutive monthly payments with interest at the state rate of 12% per annum and commencing thirty days after the Effective Date.<br><br>The Internal Revenue Service shall receive the full amount of its priority claim of $166,953.30 plus interest in sixty (60) consecutive monthly payments of **$3,385.21**, which includes interest at the rate of 8%. The monthly payments shall commence thirty days after the Effective Date.<br><br>The Texas Comptroller of Public Accounts shall receive the full amount of its priority claim in sixty consecutive monthly payments with interest at the state rate of 8.5% per annum and commencing thirty days after the Effective Date.<br><br>Holders of Allowed Priority Tax Claims are unimpaired and not entitled to vote on the plan. |
| 2 | Allowed SBA Secured Claim<br>**Impaired** | The Debtor shall pay the Holder of the SBA Secured Claim the full amount of its Secured Claim of $52,560.02 plus 9.5% interest in forty eight (48) consecutive monthly payments of **$1,320.47** commencing thirty (30) days after the Effective Date:<br><br>The SBA shall be afforded a deficiency claim of $503,819.09, which shall be treated as a Class 3 Allowed General Unsecured Claim.<br><br>The Holder of the SBA Secured Claim is impaired and entitled to vote on the Plan. |

| | | |
|---|---|---|
| 3 | Allowed General Unsecured Claims **Impaired** | All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 15th day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter for the additional four (4) years remaining on this date. Debtor shall commence disbursements to the Class 3 claims beginning the second year of the plan through the fifth year after the effective date of confirmation. Debtor will distribute up to $110,844.75 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan. The Debtor can make monthly, quarterly or yearly payments as to the Class 3 Claimants. The Debtor's General Allowed Unsecured Claimants will receive 14% of their allowed claims under this plan. Any creditor listed in the schedules of Griswold Enterprises, Inc. as disputed that did not file a claim will not receive distributions under this plan. The table for breakdown of distributions of the General Allowed Unsecured Claims is attached as Exhibit C.<br><br>Holders of General Unsecured Claims are impaired and entitled to vote on the Plan. |
| | Allowed Equity Interests in the Debtor Unimpaired | Remains vested with Samuel Griswold and Erin Macmillan Griswold.<br><br>Holders of Allowed Equity Interests are deemed to have accepted the Plan and are not entitled to vote on the Plan. |

## ARTICLE VI.
## TREATMENT OF UNCLASSIFIED CLAIMS

6.1 **Unclassified Claims.** Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

6.2 **Administrative Expense Claims.** The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court. Notwithstanding the above, the Debtor shall pay the Administrative Expense Claim of Phillips Edison & Company in forty-eight (48) consecutive monthly payments commencing thirty (30) days after the Effective Date.

6.3 **Professional Compensation and Reimbursement Claims**. All requests for allowance and payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. Any such Professional Fee Claim for which an application or request for payment is not filed with the Bankruptcy Court within that time period shall be released and forever barred, and shall not be entitled to Distributions under the Plan. Objections to the payment of such Professional Fee Claims must be filed no later than seven (7) days prior to the hearing on such Professional Fee Claims.

**6.4** The Debtor shall pay the Professional Fee Claim of Brandon J. Tittle in forty-seven (47) consecutive monthly payments commencing thirty (30) days after the Effective Date.

**6.5** **Payment of Statutory Fees and Post-Petition Date Taxes**. Notwithstanding anything herein, all fees payable pursuant to 28 U.S.C. § 1930 and all Claims of a Governmental Unit of the type described in § 503(b)(1)(B)-(C) of the Bankruptcy Code that were filed prior to the Administrative Claim Bar Date shall be treated as Allowed Administrative Expense Claims when such amounts become due and payable by the Debtor under applicable non-bankruptcy law. The dates on which those claims become due shall be their Allowance Date.

**6.6** **Payment of Subchapter V Trustee Fees.** All approved Subchapter V Trustee fees will be paid within seven (7) days of final Court approval of such fees.

## ARTICLE VII.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**7.1** **Class 1 Claimant (Allowed Priority Tax Claims)** are unimpaired and shall be satisfied as follows:

**a. Ad Valorem Taxing Authorities.**

Alief Independent School District, Klein Independent School District, Kleinwood Municipal Utility District, Harris County, and City of Houston et al. (the "Taxing Authorities") are Holders of Allowed Secured Tax Claims holding senior ad valorem tax liens against the Debtor's assets. The Taxing Authorities shall be paid in twelve (12) equal monthly installments commencing thirty (30) days after the Effective Date, with statutory postpetition interest at the rate of 12% per annum, accruing from the Petition Date until such taxes are paid in full. Notwithstanding anything contained in this Plan or in the Confirmation Order to the contrary, any prepetition and postpetition tax liens securing the Taxing Authorities' ad valorem taxes shall be retained until such taxes are paid in full. The Taxing Authorities reserve their rights to amend their claims to reflect the final 2025 tax amounts in accordance with the Texas Tax Code and are not capped by the amounts set forth in the Plan or Confirmation Order.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Holders of Allowed Secured Tax Claims for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Holders of Allowed Secured Tax Claims' setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist. Additionally, the Reorganized Debtor shall pay and maintain all ongoing postpetition taxes in the ordinary course of business and as such tax debt comes due in accordance with the Texas Property Tax Code without the need for an administrative expense claim or Debtor shall be subject to collection actions in state court without further notice or order from the Bankruptcy Court for such postpetition tax years.

A failure by the Reorganized Debtor to make a payment on the prepetition Allowed Secured Tax Claims to the Holders of Allowed Secured Tax Claims pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the

Holder of Allowed Secured Tax Claim, such Holder of Allowed Secured Tax Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln., Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon Debtor's attorney at: The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

The specific terms of the treatment of the Taxing Authorities' Secured Tax Claims set forth above shall control over any general terms set forth in the Plan.

**b. Texas Workforce Commission.**

The Texas Workforce Commission (the "TWC") is a Holder of an Allowed Secured Tax Claims holding tax liens against the Debtor's assets. TWC shall be paid in twenty-four (24) equal monthly installments commencing thirty (30) days after the Effective Date, with statutory postpetition interest at the rate of 12% per annum, accruing from the Petition Date until such taxes are paid in full. Notwithstanding anything contained in this Plan or in the Confirmation Order to the contrary, any prepetition and postpetition tax liens securing the TWC's taxes shall be retained until such taxes are paid in full. The TWC reserve the right to amend its claims to reflect the final 2021, 2022, 2023, 2024, and 2025 tax amounts in accordance with the Texas Tax Code and are not capped by the amounts set forth in the Plan or Confirmation Order.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the TWC for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the TWC's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist. Additionally, the Reorganized Debtor shall pay and maintain all ongoing postpetition taxes in the ordinary course of business and as such tax debt comes due in accordance with the Texas Property Tax Code without the need for an administrative expense claim or Debtor shall be subject to collection actions in state court without further notice or order from the Bankruptcy Court for such postpetition tax years.

A failure by the Reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC, the TWC may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln., Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon Debtor's attorney at: The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

**c. Internal Revenue Service.**

The Internal Revenue Service (the "IRS") is a Holder of an Allowed Priority Tax Claim. The IRS shall receive the full amount of its priority claim of $166,953.30 plus interest in sixty (60) consecutive monthly payments of **$3,385.21** which includes interest at the rate of 8%. The monthly payments shall commence thirty days after the Effective Date.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the IRS for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the IRS's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.
A failure by the Reorganized Debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the IRS, the IRS may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln., Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon Debtor's attorney at The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

**d. Texas Comptroller of Public Accounts.**

The Texas Comptroller of Public Accounts (the "Texas Comptroller") is a Holder of an Allowed Priority Tax Claim. The Texas Comptroller shall be paid in sixty (60) equal monthly installments commencing thirty (30) days after the Effective Date, with statutory postpetition interest at the rate of 8.50% per annum, accruing from the Petition Date until such taxes are paid in full. The Texas Comptroller reserves the right to amend its claims to reflect the final 2025 tax amounts in accordance with the Texas Tax Code and are not capped by the amounts set forth in the Plan or Confirmation Order.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Comptroller for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist. Additionally, the Reorganized Debtor shall pay and maintain all ongoing postpetition taxes in the ordinary course of business and as such tax debt comes due in accordance with the Texas Property Tax Code without the need for an administrative expense claim or Debtor shall be subject to collection actions in state court without further notice or order from the Bankruptcy Court for such postpetition tax years.
A failure by the Reorganized Debtor to make a payment on the prepetition claim owed to the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln.,

Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon Debtor's attorney at: The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

The Class 1 Claimants are unimpaired and are not entitled to vote.

**7.2** **Class 2 Claimant (Allowed SBA Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to SBA on behalf of its SBA Secured Claim is $52,560.02. The Debtor shall pay the Holder of the SBA Secured Claim sixty (60) consecutive monthly payments of **$1,320.47** commencing thirty (30) days after the Effective Date, which includes interest at 9.5% per annum.

Until the Debtor pays in full its obligations to SBA pursuant to this Plan, the prepetition liens granted to SBA shall remain in full force and effect. Upon completion of the plan payments, the prepetition liens granted to SBA shall be deemed extinguished. A failure by the Reorganized Debtor to make a payment to the SBA pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to monthly payments within thirty (30) calendar days after service of written notice of default from the SBA, may (a) enforce the entire amount of its claim, (b) impose a default interest rate as set forth in the prepetition loan documents, (c) exercise all rights and remedies under applicable nonbankruptcy law, and (d) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln., Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon the Reorganized Debtor's attorney at: The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

The Debtor shall be allowed to cure up to two (2) defaults. If the Debtor does not timely cure, or upon a third default, the automatic stay (if in effect), and the injunction described in Section 11.3 shall terminate as to the SBA and the Reorganized Debtor's personal property and the SBA would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 2 Claimant is impaired and entitled to vote on the Plan.

**7.3** **Class 3 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 15th day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter for the additional four (4) years remaining on this date. Debtor shall commence disbursements to the Class 3 claims beginning the second year of the plan through the fifth year after the effective date of confirmation. Debtor will distribute up to $110,844.75 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan. The Debtor can make monthly, quarterly or yearly payments as to the Class 3 Claimants. The Debtor's General Allowed Unsecured Claimants will receive 14% of their allowed claims under this plan. Any creditor listed in the schedules of Griswold Enterprises, Inc. as disputed that did not file a claim will not receive distributions under this plan. The table for breakdown of distributions of the General Allowed Unsecured Claims is attached as Exhibit C.

The Class 3 Claimants are impaired and entitled to vote on the Plan.

A failure by the Reorganized Debtor to make a payment to the Holders of Allowed Unsecured Claims pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default within ten (10) calendar days after service of written notice of default from the Holder of Allowed Unsecured Claim, the Holder of Allowed Unsecured Claim

may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 7711 Kleingreen Ln., Spring, TX 77379, Attn: Erin Macmillan Griswold, and upon the Reorganized Debtor's attorney at: The Fealy Law Firm, PC, 1235 North Loop W Suite 1120, Houston, TX 77008. The Notice of default shall also be served via email to 2erin.macmillan@gmail.com and vfealy@fealylawfirm.com..

The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Holder of the Allowed Unsecured Claim at its option, may declare the default non-cureable and proceed to collect the remainder of the debt under state law.

The Class 3 Claimants are impaired and entitled to vote on the Plan.

**7.4** **Class 4 (Current Owners)** are unimpaired under the Plan and shall be satisfied as follows: The Equity Interests of the Debtor shall remain vested with Samuel Griswold and Erin Macmillan Griswold.

The Class 4 Claimants are deemed to have accepted the Plan and are not entitled to vote.

## ARTICLE VIII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1** **Debtor, and Continued Operations**. From and after the Effective Date, the Debtor will continue to exist as a Reorganized Debtor. By reducing the Debtor's monthly obligations to creditors to the Reorganized Debtor's Disposable Income, the Reorganized Debtor will have sufficient cash to maintain operations and will allow the Reorganized Debtor to successfully operate following the Effective Date of the Plan.

**8.2** **Operations Between the Confirmation Date and Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. In addition, the Debtor may take all actions as may be necessary or appropriate to implement the terms and conditions of the Plan. Upon Confirmation of the Plan, all actions required of the Debtor to effectuate the Plan shall be deemed authorized and approved in all respects.

**8.3** **Payments by Disbursing Agent.** If the Plan is confirmed under section 1191(a), payments to Holders of Allowed Claims in Classes 1 through 3 of the Plan will be made by the Reorganized Debtor. If the Plan is confirmed under section 1191(b), the Debtor proposes that the Reorganized Debtor as the disbursing agent. There is cause to have Erin Macmillan Griswold serve as the disbursing agent instead of the Subchapter V Trustee, because the costs of utilizing the services of the Subchapter V Trustee would be expensive. Ms. Griswold also has experience with paying the Debtor's payroll, vendors, insurance, and utilities.

**8.4** **Post-Confirmation Management.** The Post Confirmation members of the Debtor are Samuel Griswold and Erin Macmillan Griswold.

**8.5** **Post-Effective Date Plan Implementation.** On and after the Effective Date, the Reorganized Debtor is authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may

be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**8.6** **<u>Exemption from Certain Taxes and Fees</u>**. Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**8.7** **<u>Settlement of Claims and Controversies</u>**. Pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under the Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution under the Plan on account of thereof. If the Confirmation Order is not entered or the Effective Date does not occur, the Debtor reserves its rights with respect to all disputes resolved and settled under this Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in the Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in the Debtor's and Estate's best interests and (b) fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.

**8.8** **<u>Vesting of Property of the Estate</u>**. If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**8.9** **<u>Retention of Causes of Action</u>.** Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including but not limited to, all Avoidance Actions), are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date. Following the Effective Date and the vesting of the Causes of Action with the Reorganized Debtor, the Reorganized Debtor shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, and the Reorganized

Debtor's rights to commence, prosecute, settle, or otherwise dispose of such Causes of Action shall be preserved. Upon the Effective Date, and in accordance with the terms and conditions of this Plan, the Reorganized Debtor shall have all requisite standing and authority to administer the Causes of Action.

## ARTICLE IX.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 **Assumption of Executory Contracts and Unexpired Leases**. Except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date every Executory Contract identified on the attached Schedule of Assumed Executory Contracts shall be deemed Assumed upon the payment of the cure amount identified in that Schedule. The Debtor/Reorganized Debtor reserves the right to modify the treatment of an Executory Contract pursuant to this Plan. If a contract party objects to the treatment proposed in the Schedule of Assumed Executory Contracts, it must file an objection to this Plan or otherwise waives its right to object and shall be deemed to have consented to the assumption as proposed herein. Each Executory Contract on the Schedule of Assumed Executory Contracts shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code. Nothing contained in this Plan constitutes an admission by the Debtor that any such contracts or leases are "executory" or that the Debtor has any liability thereunder. Further, such assumption is subject to the same rights that the Debtor held or holds on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law. Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

9.2 **Payments Related to Assumption of Executory Contracts**. If not the subject of *bona-fide* dispute pursuant to this Article as of Confirmation, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Reorganized Debtor pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Cure Amounts identified on the Schedule of Assumed Executory Contracts or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract. In the event of a *bona-fide* dispute pursuant to this Article, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement by the Debtor and the party to the Executory Contract.

9.3 **Claims Based on Rejection of Executory Contracts of Unexpired Leases**. Any Claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be asserted in a proof of Claim filed with the Bankruptcy Court not later than thirty (30) days after the date on which the Executory Contract was rejected or deemed rejected. The Claimant shall have either a General Unsecured Claim payable in accordance with the terms and conditions of this Plan. Any such rejection Claims not timely filed shall be released and forever barred from payment pursuant to this Plan. Any other bar date previously established for the filing of Claims based on the rejection of executory contracts or unexpired leases shall not be affected by this provision.

## ARTICLE X.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

10.1 **Objections to Claims**. Following the Effective Date, an objection to the allowance of any Claim shall be in writing and filed by the Reorganized Debtor. Any Disputed Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**10.1.1** Alternative Standing. Notwithstanding the foregoing, any party in interest that otherwise would have standing to object to a Claim absent the provisions of this Plan, may, on or before the Claims Objection Deadline, file a motion with the Bankruptcy Court requesting standing to so object on the basis that an advance, written demand has been made by the movant on the Reorganized Debtor to object to the Claim, and that said Reorganized Debtor has unjustifiably refused or failed to respond. Any such motion filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim which is the subject of the motion, until and including the date which is ten (10) business days following the date of entry of the Bankruptcy Court's order on the motion.

**10.2 Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

**10.3 Post-Confirmation Proofs of Claim and Amendments**. Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be filed in the Chapter 11 Case to assert a Claim against the Debtor or its Estate without prior authorization of the Bankruptcy Court, and any such proof of Claim that is filed without such authorization shall be deemed null, void and of no force or effect; *provided*, *however*, that the Holder of a Claim that has been evidenced in the Chapter 11 Case by the filing of a proof of Claim on or before the Bar Date shall be permitted to file an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**10.4 Settlement of Disputed Claims**. From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and § 105(a) of the Bankruptcy Code, the Reorganized Debtor shall be entitled to compromise and settle objections to Disputed Claims as set forth below:

**10.4.1** Amount in Controversy Less than $100,000. If the amount in controversy of a Disputed Claim is less than $100,000.00, the Reorganized Debtor will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, with no further approval of or notice to the Bankruptcy Court.

**10.4.2** Amount in Controversy Greater than $100,000. If the amount in controversy of a Disputed Claim is greater than $100,000.00, the Reorganized Debtor shall be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fourteen (14) days' notice filed with the Bankruptcy Court. If no objection to the proposed settlement of the Disputed Claim is filed within that fourteen-day time period or if any objecting party withdraws its objection to such settlement for any reason, the Reorganized Debtor may enter into the proposed settlement without further notice, and without the necessity of a motion hearing or order of the Bankruptcy Court. If a party objects to the proposed settlement and the proponent is unable to resolve the objection, the Bankruptcy Court shall set the matter for hearing applying the settlement guidelines of Bankruptcy Rule 9019 and, following the hearing, shall enter an Order resolving the dispute.

## ARTICLE XI.
## CONDITIONS PRECEDENT

**11.1** <u>**Conditions Precedent to Confirmation**</u>. Confirmation of the Plan shall occur upon the satisfaction of the following conditions: (a) the Clerk of the Bankruptcy Court shall have entered an order or orders (i) confirming and giving effect to the terms and provisions of the Plan, (ii) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (iii) approving the Plan Documents, and (iv) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents.

**11.2** <u>**Conditions Precedent to the Effective Date**</u>. The Effective Date shall occur upon the satisfaction of the following conditions: (a) the Bankruptcy Court has approved the Plan and entered the Confirmation Order, the Confirmation Order has become a Final Order, and it authorizes the Debtor, and Reorganized Debtor to take all actions necessary or appropriate to implement and consummate the provisions of and transactions described in or contemplated in the Plan; (b) all documents effectuating the Plan and the transactions hereunder have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

**12.1** <u>**Binding Effect**</u>. Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

**12.2** <u>**Discharge**</u>. If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**12.3** <u>**Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, during the duration of the Plan, all Persons, Entities, Holders of Claims, and Holders of Equity Interests against and in the Debtor are restrained and enjoined from taking any of the following actions against the Assets and the Reorganized Debtor (collectively the "**Injunction**</u>

**Beneficiaries**") on account of any such Claims or Equity Interests: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, or Equity Interest against the Injunction Beneficiaries, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Injunction Beneficiaries; (iii) creating, perfecting, or enforcing any encumbrance, security interest, or Lien of any kind against the Injunction Beneficiaries; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against (*x*) any obligation due the Debtor, (*y*) the Assets, or (*z*) the Injunction Beneficiaries. If allowed by the Bankruptcy Court, any Injunction Beneficiary injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' and experts' fees and disbursements and, in appropriate circumstances, may recover punitive damages. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under §§ 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect with respect to the Debtor until the Effective Date. For the avoidance of doubt, no release, exculpation, or injunctions shall be granted in contravention of section 524(e) of the Bankruptcy Code or Fifth Circuit authority, including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) and/or *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024).

**12.4** **Insurance**. Except as otherwise expressly provided in this Plan, confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured party, unless the Reorganized Debtor rejects or otherwise terminates any insurance policy. Each insurance company is prohibited from – and the Confirmation Order shall include an injunction against – denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Case or the Plan, unless said policy is rejected or otherwise terminated hereunder.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

**13.1** **Retention of Jurisdiction**. Notwithstanding entry of the Confirmation Order, or the entry of a final decree, with respect to the Chapter 11 Case, or any of them, the Bankruptcy Court shall retain jurisdiction from and after the Effective Date, to the fullest extent legally permitted, over the Chapter 11 Case, all proceedings arising under, arising in or related to the Chapter 11 Case, the Confirmation Order and the Plan including, without limitation, jurisdiction to:

**13.1.1** Determine (a) any Disputed Claims, and all related Claims remaining in controversy or otherwise Disputed after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (b) the validity, extent, priority, and avoidability and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (c) pre-confirmation tax liability pursuant to § 505 of the Bankruptcy Code, and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**13.1.2** Allow, disallow, estimate, liquidate or determine any Claim or Equity Interest against or in the Debtor and to enter or enforce any Order requiring the filing of any such Claim or Equity Interest before a particular date;

**13.1.3** Determine / Approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor pursuant to § 365 of the Bankruptcy Code and the Plan;

**13.1.4** Determine any request for payment of a potential Administrative Claim, including compensation of parties entitled thereto, or fees and reimbursements to the

Debtor;

**13.1.5** Resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was filed or whether a Disallowed Claim should be reinstated;

**13.1.6** Implement the provisions of the Plan and enter Orders and injunctions in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**13.1.7** Issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan (including all exculpations and injunctions), any Plan Document, or any transaction contemplated under any of the foregoing, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**13.1.8** Determine issues relating to the garnishment of any Distributions payable under the terms of the Plan;

**13.1.9** Modify the Plan pursuant to § 1127 of the Bankruptcy Code;

**13.1.10** Preside over and adjudicate any and all Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date;

**13.1.11** Resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

**13.1.12** Resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Case, any applicable Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is barred hereunder or for any other purpose;

**13.1.13** Preside over and determine any and all applications, claims, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Equity Interests) in the Chapter 11 Case;

**13.1.14** Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**13.1.15** Seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

**13.1.16** Consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**13.1.17** Recover all assets of the Debtor and property of the Estate, wherever located;

**13.1.18** Resolve matters concerning state, local, and federal taxes in accordance

with §§ 346, 505, and 1146 of the Bankruptcy Code;

**13.1.19** Hear any other matter not inconsistent with the Bankruptcy Code;

**13.1.20** Resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**13.1.21** Enforce any injunctions granted under the Plan;

**13.1.22** Approve settlements relating to any of the above;

**13.1.23** Determine any and all motions, applications, adversary proceedings, contested or litigated matters, including Causes of Action initiated by, against, or otherwise involving the Debtor.

**13.1.24** Hear and determine all matters necessary to enforce the rights, remedies, and obligations reserved for the Debtor, the Plan Documents, or the Confirmation Order, including interpreting any provision of any of the foregoing; and

**13.1.25** Enter a final decree and order concluding, closing, or terminating the Chapter 11 Case.

**13.2** **Limitation on Jurisdiction and Authority**. In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334 or authority to enter final judgments beyond that provided by applicable law, including the Constitution of the United States.

**13.3** **No New Requirements**. The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

## ARTICLE XIV. MISCELLANEOUS PROVISIONS

**14.1** **Authorization**. The Debtor, and the Reorganized Debtor after the Effective Date, shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**14.2** **Amendment of the Plan**. The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date. After the Effective Date, the Reorganized Debtor may, on order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

**14.3** **Non-Confirmation of the Plan**. The Proponents reserve the right to withdraw this Plan at any time prior to the Confirmation Date. If the Proponent withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, or any other Person.

**14.4 Filing of Additional Documentation**. On or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**14.5 Governing Law**. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

**14.6 Headings**. Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

**14.7 Severability**. Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Proponents reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.8 All Claims and Equity Interests**. The Plan is intended to deal with all Claims of whatever character whether or not Disputed, contingent, or liquidated and whether or not Allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code against and Equity Interests in the Debtor. However, only those Claims and Equity Interests Allowed shall be entitled to receive the treatment afforded by the Plan.

**14.9 Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

**14.10 Section 1125(e) Good-Faith Compliance**. The Proponents and their respective representatives and professionals shall be deemed to have acted in "good faith" under § 1125(e) of the Bankruptcy Code.

**14.11 Notices**. Any notice required to be given under this Plan shall be in writing and, except for a notice of change of address, shall be considered complete on the earlier of: (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Entities on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Entities on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List. Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtor and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

Debtor: With copies to:

Griswold Enterprises, LLC
dba Double Dave's Pizzaworks

Vicky M. Fealy
1235 North Loop W., Suite 1120
Houston, TX 77008

Subchapter V Trustee:

Thomas A. Howley - SBRA V
Howley Law PLLC
700 Louisiana Street, Ste. 4545
Houston, TX 77002

United States Trustee:

Office of the U.S. Trustee
Attn: Andrew Jimenez
515 Rusk Street, Suite 3516
Houston, TX 77002

**14.12 Confirmation Order.** The Confirmation Order shall provide that unless expressly provided therein or by incorporation of this Plan, the Confirmation Order does not modify, alter or supersede any order of the Bankruptcy Court entered in the Bankruptcy Case.

Dated: February 13, 2026

Respectfully submitted,

The Fealy Law Firm, P.C.

*/s/ Vicky M. Fealy*

Vicky M. Fealy
Bar No. 06870120
Nosa Aduwa
Bar No. 24071039
1235 North Loop West, Suite 1120
Houston, TX 77008
713-526-5220 phone
713-526-5227 fax

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30707 |
| | § | |
| Griswold Enterprises, LLC. | § | |
| d/b/a Double Dave's Pizzaworks, | § | |
| | § | |
| DEBTOR(S) | § | CHAPTER 11 (Subchapter V) |

**AMENDED LIQUIDATION ANALYSIS**

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor(s) assets. As set forth in the Plan, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

| Asset | Gross Value on Petition Date | Asset Debts | Value Available to Estate in Liquidation | Lienholder |
|---|---|---|---|---|
| Cash | $ 1,960.02 | $556,379.11 | ($554,419.09) | SBA |
| | | $6,909.20 | ($561,328.29) | TXWFC |
| | | $22,000.00 | ($583,328.29) | First Business pecialty |
| | | $2,359.41 | ($585,687.70) | Harris County |
| | | $3,734.78 | ($589,422.48) | Klein ISD |
| | | $1,302.96 | ($590,725.44) | Kleinwood |
| | | $295.92 | ($591,021.36) | City of Houston |
| Food Ingredients | $ 5,700.00 | $556,379.11 | ($585,321.36) | SBA |
| | | $6,909.20 | | TXWFC |
| | | $22,000.00 | | First Business pecialty |
| | | $2,359.41 | | Harris County |
| | | $3,734.78 | | Klein ISD |
| | | $1,302.96 | | Kleinwood |
| | | $295.92 | | City of Houston |

| | | | | |
|---|---|---|---|---|
| | | | | |
| **Other Property** | | | | |
| Kitchen Equipment | $ 38,900.00 | $556,379.11<br>$6,909.20<br>$22,000.00<br>$2,359.41<br>$3,734.78<br>$1,302.96<br>$295.92 | ($546,421.36) | SBA<br>TXWFC<br>First Business pecialty<br>Harris County<br>Klein ISD<br>Kleinwood<br>City of Houston |
| Office Equipment | $ 6,000.00 | $556,379.11<br>$6,909.20<br>$22,000.00<br>$2,359.41<br>$3,734.78<br>$1,302.96<br>$295.92 | ($540,421.36) | SBA<br>TXWFC<br>First Business pecialty<br>Harris County<br>Klein ISD<br>Kleinwood<br>City of Houston |
| **Total Assets** | $52,560.02 | | | . |
| **Remaining Amount Available for Unsecured Creditors** | | | ($540,421.36) | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | **$795,579.39** | |

Holders of general unsecured claims are forecast to receive a dividend of 14% of their allowed claims or $110,844.75. The Debtor(s) has estimated that its assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

In a chapter 7 liquidation, the estimated liquidation value would be ($540,421.36) Any remaining assets would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims. This would produce the following:

| | |
|---|---|
| Liquidation Value | ($540,421.36) |
| Estimated Trustee's Fees and expenses | $-0- |
| Estimated priority claims | $166,953.30 |
| Total available for holders of | ($707,374.66) |

| | |
|---|---|
| unsecured claims | |
| Estimated unsecured claims | $795,579.39 |
| Estimated percentage recovery in liquidation | 0% |

Because the plan forecasts to pay holders of unsecured claims 14% of the amount of their claims and chapter 7 liquidation is forecast to pay only 0% , this Plan satisfies the liquidation test as to holders of unsecured claims.

Dated: 02/12/2026

Respectfully submitted,

*/s/ Vicky M. Fealy*

PROPOSED COUNSEL
FOR DEBTOR

**Exhibit A**

## Griswold Enterprises, L.L.C. d/b/a Double Daves Pizzaworks
## Year 1 Projections

| | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 9,106 | 15,989 | 15,839 | 6,541 | 10,043 | 13,245 | 9,647 | 6,049 | 5,451 | 4,853 | 3,255 | 4,657 | |
| **Gross Revenue** | 42,233 | 48,000 | 46,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 55,000 | 53,000 | 56,000 | 53,000 | |
| **Capital Contribution repay** | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| **Expenses** | | | | | | | | | | | | | |
| Rent | | 8,800 | 6,800 | - | - | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | |
| Electric | 1,200 | 1,200 | 1,200 | 1,200 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | |
| Gas | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | |
| Water | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| Garbage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Co2 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | |
| Payroll (including Payroll taxes) | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | |
| Sales Tax | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | |
| Property tax | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Unemployment tax | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Grease Service | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | |
| Bookkeeping/CPA/Payroll Service | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Pest Control | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Microworks Point of Sale | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | |
| Dishwasher Lease | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Labatt (food supplier) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | |
| **Total Expenses** | **35,350** | **44,150** | **42,150** | **35,350** | **35,650** | **42,450** | **42,450** | **42,450** | **42,450** | **42,450** | **42,450** | **42,450** | |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | | |
| Subchapter V Trustee Fees | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | - | - | |
| Tittle Law Firm Fees | - | - | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 2,688 | 3,688 | 3,688 | 3,688 | 3,688 | **$25,880.00** |
| Vicky Fealy Law Firm Fees | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | | | | | | **$24,000.00** |
| Unpaid Post-Petition Rent | - | 2,000 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 6,300 | 6,300 | 6,300 | 6,300 | **$57,300.00** |
| Creditors - Priority Unsecured | - | 1,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | **$56,000.00** |
| Creditors - Secured claims | - | 700 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 15,880 |
| Creditor - unsecured creditors | - | 300 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | **$8,100.00** |
| **Total Bankruptcy Related Expenses** | **-** | **9,000** | **18,148** | **18,148** | **18,148** | **18,148** | **18,148** | **15,148** | **18,148** | **17,148** | **17,148** | **17,148** | |
| Ending Cash | 15,989 | 15,839 | 6,541 | 10,043 | 13,245 | 9,647 | 6,049 | 5,451 | 4,853 | 3,255 | 4,657 | 3,059 | |

**EXHIBIT B**

# Griswold Enterprises, L.L.C. d/b/a Double Daves Pizzaworks
## Year 2 Projections

| | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 3,059 | 3,021 | 2,983 | 3,945 | 4,807 | 5,669 | 4,531 | 5,193 | 5,555 | 5,917 | 3,779 | 3,641 | |
| **Gross Revenue** | 55,000 | 55,000 | 56,000 | 56,000 | 56,000 | 54,000 | 56,000 | 56,000 | 56,000 | 54,000 | 56,000 | 56,000 | |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Expenses** | | | | | | | | | | | | | |
| Rent | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | |
| Electric | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,200 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 | |
| Gas | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Water | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| Garbage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Co2 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | |
| Payroll (including Payroll taxes) | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | |
| Sales Tax | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | |
| Property tax | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Unemployment tax | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Grease Service | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | |
| Bookkeeping/CPA/Payroll Service | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Pest Control | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Microworks Point of Sale | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | |
| Dishwasher Lease | 150 | 150 | 150 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Labatt (food supplier) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | |
| **Total Expenses** | **43,890** | **43,890** | **43,890** | **43,990** | **43,990** | **43,990** | **44,190** | **44,490** | **44,490** | **44,990** | **44,990** | **44,990** | |
| | | | | | | | | | | | | | - |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | | |
| Subchapter V Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Tittle Law Firm Fees | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | **20256** |
| Unpaid Post-Petition Rent | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | **$39,600.00** |
| Creditors - Priority Unsecured | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48000 |
| Creditors - Secured claims | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 16560 |
| Creditor - unsecured creditors | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 9360 |
| **Total Bankruptcy Related Expenses** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | |
| Ending Cash | 3,021 | 2,983 | 3,945 | 4,807 | 5,669 | 4,531 | 5,193 | 5,555 | 5,917 | 3,779 | 3,641 | 3,503 | |

**EXHIBIT B**

## Griswold Enterprises, L.L.C. d/b/a Double Daves Pizzaworks
## Year 3 Projections

| | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 3,503 | 3,965 | 4,427 | 3,889 | 4,251 | 3,613 | 3,975 | 3,837 | 3,699 | 4,561 | 4,923 | 5,285 | |
| **Gross Revenue** | 56,000 | 56,000 | 55,000 | 56,000 | 55,000 | 56,000 | 56,000 | 56,000 | 57,000 | 57,000 | 57,000 | 55,000 | |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Expenses** | | | | | | | | | | | | | |
| Rent | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | |
| Electric | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 | |
| Gas | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Water | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| Garbage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Co2 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | |
| Payroll (including Payroll taxes) | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | |
| Sales Tax | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | |
| property tax | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Unemployment tax | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Grease Service | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | |
| Bookkeeping/CPA/Payroll Service | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Pest Control | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Microworks Point of Sale | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | |
| Dishwasher Lease | 150 | 150 | 150 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Labatt (food supplier) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | |
| **Total Expenses** | **44,390** | **44,390** | **44,390** | **44,490** | **44,490** | **44,490** | **44,990** | **44,990** | **44,990** | **45,490** | **45,490** | **45,490** | |
| | | | | | | | | | | | | | - |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | | |
| Subchapter V Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Tittle Law Firm Fees | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | **20256** |
| Unpaid Post-Petition Rent | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | **$39,600.00** |
| Creditors - Priority Unsecured | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48000 |
| Creditors - Secured claims | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 16560 |
| Creditor - unsecured creditors | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 780 | 9360 |
| **Total Bankruptcy Related Expenses** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | **11,148** | |
| Ending Cash | 3,965 | 4,427 | 3,889 | 4,251 | 3,613 | 3,975 | 3,837 | 3,699 | 4,561 | 4,923 | 5,285 | 3,647 | |

**EXHIBIT B**

## Griswold Enterprises, L.L.C. d/b/a Double Daves Pizzaworks
## Year 4 Projections

| | Feb-28 | Mar-28 | Apr-28 | May-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 3,647 | 4,889 | 4,131 | 3,373 | 3,515 | 3,657 | 4,799 | 3,441 | 4,083 | 3,725 | 3,867 | 5,539 | |
| **Gross Revenue** | 60,000 | 58,000 | 58,000 | 59,000 | 59,000 | 60,000 | 58,000 | 60,000 | 59,000 | 60,000 | 60,000 | 60,000 | |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Expenses** | | | | | | | | | | | | | |
| Rent | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | |
| Electric | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 | |
| Gas | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Water | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| Garbage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Co2 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | |
| Payroll (including Payroll taxes) | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | |
| Sales Tax | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | |
| Property tax | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Unemployment tax | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Grease Service | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | |
| Bookkeeping/CPA/Payroll Service | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Pest Control | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | |
| Microworks Point of Sale | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | |
| Dishwasher Lease | 150 | 150 | 150 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | |
| Labatt (food supplier) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | |
| **Total Expenses** | **45,890** | **45,890** | **45,890** | **45,990** | **45,990** | **45,990** | **46,490** | **46,490** | **46,490** | **46,990** | **46,990** | **46,990** | |
| | | | | | | | | | | | | | - |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | | |
| Subchapter V Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Tittle Law Firm Fees | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 1,688 | 158 | | **20256** |
| Unpaid Post-Petition Rent | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | **$39,600.00** |
| Creditors - Priority Unsecured | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60000 |
| Creditors - Secured claims | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 1,380 | 16560 |
| Creditor - unsecured creditors | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18000 |
| **Total Bankruptcy Related Expenses** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **12,868** | **11,338** | **11,180** | |
| Ending Cash | 4,889 | 4,131 | 3,373 | 3,515 | 3,657 | 4,799 | 3,441 | 4,083 | 3,725 | 3,867 | 5,539 | 7,369 | |

**EXHIBIT B**

**Griswold Enterprises, L.L.C. d/b/a Double Daves Pizzaworks**
**Year 5 Projections**

| | Feb-28 | Mar-28 | Apr-28 | May-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 3,647 | 5,556 | 11,064 | 16,073 | 21,482 | 24,891 | 28,300 | 31,209 | 34,118 | 39,027 | 43,436 | 47,845 |
| **Gross Revenue** | 57,000 | 58,000 | 56,000 | 58,000 | 56,000 | 56,000 | 56,000 | 56,000 | 58,000 | 58,000 | 58,000 | 58,000 |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Expenses** | | | | | | | | | | | | |
| Rent | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Electric | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 |
| Gas | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Water | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Garbage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Co2 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Insurance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Payroll (including Payroll taxes) | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| Sales Tax | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Property tax | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Unemployment tax | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Grease Service | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Bookkeeping/CPA/Payroll Service | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Pest Control | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Microworks Point of Sale | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 |
| Dishwasher Lease | 150 | 150 | 150 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Labatt (food supplier) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Owner's Draw | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| **Total Expenses** | **48,490** | **45,890** | **45,890** | **45,990** | **45,990** | **45,990** | **46,490** | **46,490** | **46,490** | **46,990** | **46,990** | **46,990** |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Creditors - Priority Unsecured | 3,997 | 3,997 | 2,456 | | | | | | | | | |
| Creditor - unsecured creditors | 2,604 | 2,604 | 2,645 | 6,601 | 6,601 | 6,601 | 6,601 | 6,601 | 6,601 | 6,601 | 6,601 | 6,601 |
| **Total Bankruptcy Related Expenses** | **6,601** | **6,601** | **5,101** | **6,601** | **6,601** | **6,601** | **6,601** | **6,601** | **6,601** | **6,601** | **6,601** | **6,601** |
| Ending Cash | 5,556 | 11,064 | 16,073 | 21,482 | 24,891 | 28,300 | 31,209 | 34,118 | 39,027 | 43,436 | 47,845 | 52,254 |

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5- year Plan at 14% of Total<br><br>Claim |
|---|---|---|
| | | |
| Bottin Line Concepts, LLC (11-1) | $24,385.65 | $3,413.99 |
| JPMorgan Chase Bank, N.A. (1) | $5,363.73 | $75.14 |
| First Business Specialty Finance LLC (14-1) | $42,210.38 | $5,909.40 |
| Forward Financing (12-01) | $22,628.96 | $3,168.05 |
| Grettawood Services (disputed) | $unknown | $-0- |
| Internal Revenue Service (16-3) | $13,444.27 | $1,882.20 |
| Merchant Capital Services (2) | $71,711.35 | $10039.59 |
| On Deck Capital Inc. (10-1) | $43726.52 | $6,121.72 |
| Phillips Edison & Company | $64,288.11 | $9,000.36 |
| Rewards Network (18-1) | $4,944.56 | $692.24 |
| Southwest Properties (disputed) | $200,000.00 | $-0- |
| Texas Comptroller of Public Accounts (8-1) | $52.77 | $7.39 |
| US Small Business Administration (17-1) | $503,819.09 | $70,534.67 |
| | | |
| Totals: | $796,575.39 | $110,844.75 |

EXHIBIT C